IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WOOD,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>CAPITAL VISION SERVICES, LLC,<br>MYEYEDR. OPTOMETRISTS, LLC,<br>MYEYEDR. OPTOMETRY OF<br>ILLINOIS, LCC,<br><br>　　　　*Defendants*. | No. 20 C 4584<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Wood brings this suit on behalf of himself and a putative class against Defendants Capital Vision Services, LLC, MyEyeDr. Optometrists, LLC, and MyEyeDr. Optometry of Illinois, LLC (collectively, "Defendants") alleging violation of the Telephone Consumer Protection Act ("TCPA"). Defendants move to strike Wood's class allegations. [40]. As discussed further below, that motion is denied.

### BACKGROUND

Plaintiff Wood alleges that on July 14, 2020, he received a prerecorded voicemail message from the Defendants. Plaintiff contends he did not consent to receive that voicemail. (Dkt. 34, Second Amended Complaint ¶¶ 16-19, 24). Defendants may have obtained Plaintiff's cell phone number when he purchased non-prescription sunglasses in 2017, but Plaintiff alleges that any consent given at that time was not for the type of call and voicemail he received from Defendants in 2020.

Plaintiff subsequently brought suit under the Telephone Consumer Protection Act ("TCPA") on behalf of himself and a putative class.

Plaintiff proposes two classes in his Second Amended Complaint:

> **Telemarketing Class**: All persons in the United States: (1) whose cellular telephone number, on or after five years prior to the filing of this action; (2) CVS, MyEyeDr., MyEyeDr.-IL, called or caused to be called, using a prerecorded voice message; (3) where such message encouraged the recipient to purchase eye exam services from Defendants; (4) where recipient had not previously received an eye exam from CVS, MyEyeDr. or MyEyeDr.-IL.
>
> **Robocall Class**: All persons in the United States: (1) whose cellular telephone number, on or after five years prior to the filing of this action; (2) CVS, MyEyeDr., MyEyeDr.-IL or someone on their behalf called using the same or similar artificial or prerecorded voice used to call Plaintiff; (3) where such calling occurred without the person's permission.

SAC ¶ 34.

Defendants now move to strike the class allegations on the grounds that (1) Plaintiff is an atypical and inadequate class representative; (2) the class is overbroad; (3) individualized inquiries predominate over common issues of fact or law; (4) Plaintiff's Robocall Class is an impermissible failsafe class; and (5) the Court lacks subject matter jurisdiction over at least some class members.

## LEGAL STANDARD

Consistent with Rule 23, "a court may deny class certification even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) Courts in this district have generally recognized that striking class allegations on the pleadings is permitted, but only "when it is apparent from the complaint that class certification is inappropriate." *See, e.g., Rysewyk v.*

*Sears Holding Corp.*, No. 15 CV 4519, 2015 WL 9259886, at *7 (N.D. Ill. Dec. 18, 2015). This approach accords with Rule 23, which stipulates that the court must determine whether to certify the case as a class action "[a]t an early practicable time." *See Kasalo,* 656 F.3d at 563 (7th Cir. 2011). However, striking class allegations at the pleadings stage may only occur "when the pleadings are facially defective and definitively establish that a class action cannot be maintained." *Murdock-Alexander v. Tempsnow Employment*, No. 16-cv-5182, 2016 WL 6833961, at *3-4 (N.D. Ill. Nov. 21, 2016). If issues concerning class certification are factual, requiring discovery to determine whether certification is appropriate, a motion to strike class allegations at the pleading stage is premature. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014). Unlike with a motion for class certification, on a motion to strike class allegations, the defendant, as the movant, bears the burden of persuasion. *Rysewyk v. Sears Holdings Corp.*, No. 15 CV 4519, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015).

Class certification is appropriate where a plaintiff can meet the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Additionally, a plaintiff must also satisfy one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

## DISCUSSION

### I. Adequacy and Typicality

Rule 23(a) requires Plaintiff to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the

representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). Defendants argue that because Plaintiff's claim is "whether MyEyeDr.'s sole message fell within the scope of consent that Plaintiff provided during his earlier transaction" that the circumstances surrounding his claim are too individualized to support adequacy and typicality. (Dkt. 40 at 6).

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... her claims are based on the same legal theory." Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims "'have the same essential characteristics as the claims of the class at large.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (internal citations omitted).

Defendants rely on *Tillman v. Hertz Corp.*, a case that is procedurally and factually distinct. 2019 WL 3231377 (N.D. Ill. Jul. 18, 2019). The court in *Tillman* identified—*after* discovery and summary judgment briefing had taken place—that numerous contested fasts destroyed any notion of typicality and adequacy. These facts included the type of executed contract, the type of calls made by those defendants, and whether and how consent was revoked. While there are some questions surrounding Plaintiff's consent in this case,[1] no discovery has taken place and the class itself does not require any issue of consent to be decided on its face (unlike the class definition in *Tillman*). And while Tillman had not conducted class-specific discovery, there had been discovery for summary judgment. Here, Plaintiff is

---

[1] Defendants' laundry list of "contested facts" boils down to a question of consent. (Dkt. 46 at 4).

alleging that he received a voicemail encouraging him to purchase eye exam services and had not previously received an exam from Defendants. Typicality under Rule 23(a)(3) "should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members," *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011). The class definition does not differentiate between putative class members who may have provided consent to Defendants (in a different context) and those who have not. The fact that Plaintiff may have provided some consent, and what that consent entailed, is not fatal to his class allegations at this stage of the proceedings. *See, e.g., Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 225 (N.D. Ill. 2016) ("All class members allegedly received calls or text messages… in violation of the TCPA, and that is enough to satisfy the typicality requirement.") Because the issues surrounding class certification are factual, striking the class allegations prior to class-wide discovery on these grounds would be premature.

## II. Overbreadth

Next, Defendants contend that if Plaintiff's individual TCPA claim requires a fact-based inquiry, then a similar fact-based inquiry is required for each and every putative class member. Defendants rely on the existence of the Healthcare Treatment Exemption and an "emergency purposes" exception to TCPA liability to argue that the class definition is facially overbroad. (Dkt. 40 at 8-9) (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8031-32 ¶¶ 143-48 (July 10, 2015) and 47 C.F.R. § 64.1200(a)(1).)

Defendants have not identified any authority that supports striking class allegations where the existence of exceptions to TCPA liability might attach and have further not identified how many—*if any*—individuals might fall within these exceptions. This is precisely the type of question that may be addressed more fully during class discovery.[2] At this stage, with no information about the applicability of these exceptions to the putative class, it would be premature and speculative to strike the allegations. *See Messner v. Northshore U. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant…There is no precise measure for 'a great many.' Such determinations are a matter of degree and will turn on the facts as they appear from case to case.")

### III. Predominance

Defendants also ask that the class allegations be stricken because determining the application of certain health care exceptions to the TCPA and other issues of consent would predominate over the common issues of law or fact. "Predominance is similar to commonality but requires a 'far more demanding' inquiry." *Buonomo v. Optimum Outcomes, Inc.,* 301 F.R.D. 292. Predominance is a qualitative decision about whether common questions represent a significant aspect of a case. *Messner v.*

---

[2] In *Vann v. Dolly*, 3030 WL 902981 (N.D. Ill. Feb. 25, 2020), the court found class allegations to be facially overbroad because the class definition included "all individuals who were employed" during a timeframe, while the plaintiffs alleged harms suffered by those employed as "helpers." *Id.* at *5. That is the type of facial overbreadth properly considered on a motion to strike class allegations. Here, that there *may* be some individuals who fit into the exceptions or exemptions, there is no evidence of that (yet) and so the claim is not facially overbroad.

*Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). It is true that the scope of consent may be a fact-intensive, particularized inquiry that may preclude class certification. *See, e.g., Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 642 (N.D. Ill. 2019); *Khalil v. McGrath Colosimo*, 2018 WL 11216391 (N.D. Ill. Aug. 22, 2018) ("The scope of consent is a fact-intensive inquiry."); *Oliver v. TTC-Ameridial, LLC*, 2018 WL 1255017, *7 (N.D. Ill. March 12, 2018) ("[U]nder the TCPA, the scope of a person's consent to receive calls depends upon the context in which consent was given.")

Defendants argue that the Healthcare Treatment Exemption and "emergency purposes" exception to the TCPA require individualized inquiries that preclude class treatment. (Dkt. 40 at 10-11). Defendants identify specific evidence that might be required including whether Defendants' message was covered, whether the potential class member provided their phone number to Defendants, whether the Defendants stated its contact information, whether the message was specifically concise, and whether the Defendants provided an opt-out mechanism. (*Id.*) These questions may rise to the level of a fact-specific inquiry that precludes certification, but at present are merely speculative as to the amount of evidence that will be required to determine class membership. However, Defendants have not presented any specific evidence that these issues of individualized consent will predominate. *See Jamison v. First Credit Services, Inc.* 290 F.R.D. 92, 106-107 (N.D. Ill. 2013) ("The rule [] is that issues of individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls

on their cellphones."); *see also, e.g., G.M. Sign, Inc. v. Franklin Bank, S.S.B.,* No. 06 C 949, 2008 WL 3889950, at *6 (Aug. 20, 2008) (Kocoras, J.) (rejecting individualized inquiry into consent as a bar to certification because "[s]uch evidence would be within the knowledge of the potential class member, and a party would need a good-faith basis to believe that he or she satisfies the class definition before making a representation to this court to that effect.")

Without "specific evidence—as opposed to mere speculation—that [a] purportedly individualized issue predominates over common issues," the court cannot conclude that individualized factual questions predominate at this stage. *See, e.g., Heard v. Becton, Dickinson & Co.,* 524 F. Supp. 3d 831, 850 (N.D. Ill. 2021). Accordingly, the Court denies Defendants' motion to strike the class allegations based on predominance.

## IV.      Fail-Safe Class

Defendants argue that the "Robocall Class" pled by Wood is an impermissible fail-safe class because it requires class members to have been contacted "without the person's permission." (SAC ¶ 34.) A fail-safe class "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id; see also Mauer v. Am. Intercontinental Univ., Inc.*, 2016 WL 4698665, *3 (N.D. Ill. Sept. 8, 2016) (finding class in TCPA action to be impermissible fail safe because "whether an

individual qualifies as a class member turns on consent and so membership in the class depends on the presence of a valid claim against Defendants.")

Plaintiff concedes that the Robocall Class "may be conditioned on liability because it only includes individuals called 'without permission.'" (Opp. at 7-8) but asks that he be permitted to refine the class definition instead of having the allegations stricken. Courts in this district have generally allowed a fail-safe class to be refined when considered on an early motion to strike. *See, e.g.,* 2016 WL 1182001 at *8 (N.D. Ill. Mar. 28, 2016) (declining to strike fail-safe class definition where plaintiffs had not yet moved to certify the purported class and instead considering the class definition "a placeholder for plaintiffs to seek certification if it becomes appropriate to do so"); *Wolfkiel v. Intersections Ins. Servs.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014) (possible existence of fail-safe class was not a basis to strike class allegations prior to certification stage). Therefore, Plaintiff may amend his class definition, either at this time or when he moves for class certification, to rectify the fail-safe problem identified here. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (noting that Rule 15 requirements for amendment of pleadings are inapplicable to class definitions but that it was not an abuse of discretion for district court to require plaintiffs to propose class definition at an early practicable time and not attempt to revise definition over four years into the litigation).

V.   **Subject Matter Jurisdiction**

Finally, Defendants contend that the Court is deprived of subject matter jurisdiction for nearly all of the proposed classes' claims and ask that the claims be

stricken on that basis. (Dkt. 40 at 12-14). This argument rests on the recent decision in *Barr v. American Association of Political Consultants, Inc.* 140 S. Ct. 2335 (2020), where the Supreme Court held in a plurality that the TCPA's automated-call ban was an unconstitutional content-based restriction when combined with the government-debt exception (which previously had allowed government debt collectors to violate the ban). The government debt exception was severed and the ban survived. The question is then whether the automated call ban's unconstitutionality precludes subject matter jurisdiction over any TCPA claim for automated calls made between 2015 (when the ban was enacted) and July 2020 (when the government debt exception was severed). The Seventh Circuit has not yet decided this issue.

As Plaintiff points out, Justice Kavanaugh, who authored the principal plurality opinion in *AAPC,* anticipated the argument now made by Defendants and suggested that the invalidity of the government debt exception "does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC* at 2355 n.12. This comment suggests that the robocall provision remained in full force between 2015 to 2020, rather than creating a five-year escape hatch for robocallers to dodge liability. While dicta, it is persuasive.

This issue was recently considered by the Sixth Circuit in *Lindenbaum v. Realgy, LLC,* 13 F.4th 524 (6th Cir. 2021). There, the district court found[3] that there was no subject matter jurisdiction because the statute was unconstitutional at the time of the alleged violations. Reversing, the Sixth Circuit explained that severance

---

[3] Defendants cited the district court's opinion (N.D. Ohio) in support of their position prior to the Sixth Circuit's decision. *See* Dkt. 40 at 13.

is not a remedy, so a legislative act would be required in order for application to be prospective only:

> [T]he Court recognized only that the Constitution had "automatically displace[d]" the government-debt-collector exception from the start, then interpreted what the statute has always meant in its absence . . . That legal determination applies retroactively.

*Lindenbaum*, 13 F.4th at 530 (internal citations omitted). The majority of district courts considering this issue have agreed with the Sixth Circuit. *See Marshall v. Grubhub, Inc.*, 2021 WL 4401496, at *3 n.3 (N.D. Ill. Sept. 27, 2021) (collecting cases); *Poonja v. Kelly Servs., Inc.*, No. 20-CV-4388, 2021 WL 4459526, at *4 (N.D. Ill. Sept. 29, 2021). The Court follows the majority view that the robocall provision remained constitutional during the relevant period and thus the Court is not deprived of subject matter jurisdiction over prospective class members on that basis.

## CONCLUSION

For the reasons given herein, Defendants' Motion to Strike Class Allegations [40] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: November 12, 2021